WILLIAM CAROL MITCHELL *v.* STATE OF INDIANA.

[No. 170S10. Filed October 19, 1972.]

*Olsen and Niederhaus,* of Evansville, *John Burley Scales,* of Boonville, for appellant.

*Theodore L. Sendak,* Attorney General, *Mark Peden,* Deputy Attorney General, for appellee.

ARTERBURN, C.J.—This is an appeal from a conviction of first-degree murder in which the appellant was sentenced to life imprisonment. The charge stems from an incident which took place at a Red Bird Filling Station in Evansville, Indiana, where the station attendant, one Wayne Eugene Pauley, was shot to death during the perpetration of an alleged robbery on January 23, 1969.

On that evening George Hall, Rick Utley, Lee McKenzie, and defendant-Mitchell left the apartment of Mitchell's girl-friend, Marie Hall. Rick Utley had a .22 caliber pistol in his

possession. For some time prior to that evening, defendant and Marie Hall had been living together on a part-time basis. The consistency of the evidence ends at this point.

The testimony of Hall, Utley and McKenzie is as follows:

After leaving the apartment the foursome drove around in Hall's car for 10-15 minutes before stopping at the Red Bird Station for gasoline. They then proceeded back to Marie Hall's apartment where they obtained a blond hairpiece, a cap and a hat. During this period of time there was a discussion concerning the attendant having some money on his person. The party subsequently returned to a point four blocks from the station. Lee McKenzie and defendant left Hall's car and began walking toward the station. Defendant was carrying the .22 caliber pistol which Utley had given him earlier.

McKenzie stated that defendant entered the station while he waited outside. He could hear Mitchell and the attendant talking.

"A. [McKenzie] He came back outside the station and asked me was I goin' go with him and I told him no, I had a job and didn't want nothin' to do with it and then he cussed me out and then I turned and walked away and . . .

\* \* \*

Q. [By the Prosecuting Attorney] Okay, and then what did Mitchell do?

A. He say he was going on through with it, so he turned around and went back into the station.

Q. Through with what, did he say what?

A. He was going to get some money, that's what he said."

McKenzie testified that he then began walking away from the station. He had walked one-half block when he heard two shots. Mitchell then came running up behind McKenzie and stated that he thought he had killed the attendant. The pistol was in Mitchell's possession at that time. McKenzie and defendant were then picked up by Hall and Utley at which time Mitchell again reported shooting the attendant. According to McKenzie the group then proceeded to the home

of Mitchell's mother on Line Street where Mitchell and Utley got out of the car to hide the weapon. Utley testified that defendant instructed him to conceal the pistol under the seat of a disabled car parked in the back yard of a house on Line Street. Utley stated that he and defendant then walked back to Marie Hall's apartment.

Defendant-Mitchell had quite a different version of the events which transpired that evening. He testified that he had consumed a full water glass of bourbon before leaving the apartment. Some time later he drank two cans of beer from a six pack which the group obtained from a local bar before returning to Marie Hall's apartment. After a few minutes the group left the apartment for a second time and drove to an alley about one block from the station. Hall got out of the car and was gone for 15-20 minutes. The others remained in the car until Hall returned. Mitchell testified that when Hall returned:

"[Mitchell] Hall backed out of the alley and went down the street about a half a block or a block. And pulled over, and McKenzie said, he asked me, he said 'Come go with me.' And I asked him where he was going. And he just said 'Come go with me.' And so in the direction that he would be going would be going to his apartment, and I was remembering what he said back in the alley, that he was going home. And so I got out of the car with him.

Q. [By defense counsel] And where did you go?

A. Well, he went toward home and then he turned toward the gas station.

Q. I see, Now do you know where the pistol was at this time?

A. No, I didn't.

Q. Well after you got down to the gas station there then. What happened?

A. Well, I was, he was in front of me. Walking because I guess I was a little tottery. Because I'd been drinking. And he was in front of me and he got up to the gas station and he went in.

\* \* \*

Q. Now what did Mr. McKenzie do when he was in the service station there, if anything? That you saw?

A. Well he had his hand in his pocket and I seen him take his hand out.

Q. Did you see anything in his hand?

A. No I didn't.

Q. What happened then?

A. I heard a shot.

Q. What did you see?

A. I saw the attendant slump. And I turned to run, and I heard another shot."

Defendant related that McKenzie overtook him on foot and threatened to kill him if he reported what had happened.

The jury was thus required to choose between two versions of who did the shooting which took place that evening. Their selection was assisted by the introduction into evidence of a .22 caliber pistol similar to the one allegedly in defendant's possession when the attendant was shot. This weapon was located under steps leading to the defendant's mother's home at 923 Line Street. Although defendant had been in custody for more than 24 hours when the police discovered the pistol, they chose not to obtain a search warrant. It is appellant's contention that the introduction of the revolver, as the product of a warrantless search, violated his constitutional right to be free from unreasonable search and seizure. U.S. CONST. amend. IV; IND. CONST. art. I, § 11; *Mapp* v. *Ohio* (1961), 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081.

Since the state has not attempted to justify the police officers conduct on independent grounds [*See eg. Frazier* v. *Cupp* (1969), 394 U.S. 731, 89 S. Ct. 1420, 22 L. Ed. 2d 684; *Warden, Maryland Penitentiary* v. *Hayden* (1967), 387 U.S. 294, 87 S. Ct. 1642, 18 L. Ed. 2d 782; *Maxey* v. *State* (1969), 251 Ind. 645, 244 N. E. 2d 650, *cert. denied* 397 U.S. 949, 90 S. Ct. 969, 25 L. Ed. 2d 130; *Wilson* v. *State* (1966), 247 Ind. 454, 217 N. E. 2d 147] the initial issue is whether defendant possessed the requisite

standing to complain of the search and the introduction of its products into evidence. *See Mancusi* v. *DeForte* (1968), 392 U.S. 364, 88 S. Ct. 2120, 20 L. Ed. 2d 1154; *Kirkland* v. *State* (1968), 249 Ind. 305, 232 N. E. 2d 365; *Lindsey* v. *State* (1965), 246 Ind. 431, 204 N. E. 2d 357. Because appellant specifically disclaimed any interest in the item seized [*See Kirkland* v. *State* (1968), 249 Ind. 305, 232 N. E. 2d 365; *Leonard* v. *State* (1968), 249 Ind. 361, 232 N. E. 2d 882], our inquiry is limited to a consideration of his relationship with the searched premises. *Mancusi* v. *DeForte* (1968), 382 U.S. 364, 88 S. Ct. 2120, 20 L. Ed. 2d 1154; *Jones* v. *United States* (1960), 362 U.S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697, 78 A. L. R. 2d 233. *Lindsey* v. *State* (1965), 246 Ind. 431, 204 N. E. 2d 357.

During the course of the trial, the prosecution introduced testimony tending to show that the defendant was maintaining a residence with his girlfriend at 901 Sixth Street, Evansville. Defendant, on the other hand, produced witnesses who indicated that he was actually living with his mother at 923 Line Street, Evansville, where the gun was found.

Marie Hall, testifying for the state, related that Mitchell spent an average of three to four nights per week in her apartment. The prosecution produced no witness who could state that defendant resided exclusively with Marie Hall. On behalf of the defense, appellant's mother stated that he lived with her in her house and kept some of his personal items there. Thus, defendant appears to have been maintaining two domiciles. A person may maintain more than one home or place of habitation with the expectation that both will be free from an unlawful intrusion. Appellant therefore possessed requisite standing to protest a warrantless search of either address. *Roberson* v. *United States* (6th Cir. 1948), 165 F. 2d 752; *cf. Mancusi* v. *DeForte* (1968), 392 U.S. 364, 88 S. Ct. 2120, 20 L. Ed 2d 1154, *and Jones* v. *United States* (1960), 362 U.S. 257, 80 S. Ct 725, 4 L. Ed. 2d 697, 78 A. L. R. 2d 233. Under these circumstances

we conclude that it was error to allow the introduction of the weapon and the police officer's testimony concerning its location for the reason that it violated appellant's right to be free from unreasonable search and seizure. *Mapp* v. *Ohio* (1961), 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081; *Crowe* v. *State* (1969), 251 Ind. 562, 243 N. E. 2d 759. It remains to be determined whether this error was prejudicial to defendant in this case.

Holding that the weapon was searched for and seized in violation of the 4th Amendment prohibition against unreasonable searches and seizures does not end the matter, nor does it require an automatic reversal. We must still face the question of whether or not appellant was prejudiced to the extent that the introduction of the gun in evidence contributed to the verdict against him.

If the introduction of inadmissible evidence made no contribution to the verdict, then the constitutional error is harmless. *Chapman* v. *California* (1967), 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705, *rehearing denied* 386 U.S. 987; *cf. Harrington* v. *California* (1969), 395 U.S. 250, 89 S. Ct. 1726, 23 L. Ed. 2d 284. In Indiana, it is well settled that the introduction of otherwise inadmissible evidence which is merely cumulative and not decisive of guilt is not prejudicial error. *See Grimes* v. *State* (1972), 258 Ind. 257, 280 N. E. 2d 575; *Jackson* v. *State* (1971), 257 Ind. 477, 275 N. E. 2d 538. However, if the record of the case, as a whole, discloses that the evidence introduced was likely to have had a prejudicial impact upon the mind of the average juror, thereby contributing to the verdict rendered, we will be compelled to reverse.

A careful review of the evidence presented at trial indicates that the introduction of the .22 caliber pistol was likely to have had a prejudicial effect upon the minds of the jurors. The jury had reason to believe that a .22 caliber weapon of some sort had been used in the commission of the crime.

The evidence on the point had been provided by the testimony of the alleged co-conspirators. However, there was a conflict in the evidence as to which of the accomplices actually used the weapon to kill the station attendant. Under such circumstances, and where the credibility of each of the accomplices is a crucial issue in the guilt determining process, this court cannot say that the introduction of this gun into evidence was harmless error. The gun and the testimony of the police officers who conducted the illegal search is not merely cumulative evidence, since the seizure of the gun from under the steps of the defendant's mother's home supports and corroborates the testimony of Utley and the other accomplices, thereby rendering more plausible the resulting inference that the gun was placed there by defendant. Of equal significance, the introduction of this evidence adds to the credibility of the accomplices.

The evidence against Mitchell was the product of the testimony of the alleged co-conspirators. Without the introduction of the gun and the testimony of the police officers there would have been no direct connection between the defendant and the commission of the crime, except that provided by the accomplices.

Under the circumstances, we are constrained to hold that the introduction of the gun and the testimony of the police officers, describing the circumstances surrounding the illegal search, including how they came to undertake it, was reversible error. Any evidence, otherwise inadmissible, which would support the credibility of an accomplice whose testimony places the blame on another co-conspirator, cannot be said to be harmless, and therefore not prejudicial. The appellant has made other allegations of error. Since this case must be retried, we do not deem it necessary to resolve the additional questions presented.

Reversed and remanded with instructions to grant a new trial not inconsistent with this opinion.

DeBruler, Hunter, Prentice, JJ., concur; Givan, J., dissents with opinion.

## DISSENTING OPINION

GIVAN, J.—I dissent from the majority opinion in this case. The evidence as recited in the majority opinion indicates two versions of the Appellant Mitchell's participation in the alleged robbery. One version, the testimony of co-Defendant McKenzie, placed the appellant in the filling station as the perpetrator of the robbery. The other version was the testimony of the Appellant Mitchell, who stated that it was McKenzie who had committed the robbery and fired the fatal shots. I agree with the majority that the pistol is not admissible in evidence by reason of the failure of police to obtain a search warrant. However, I would follow the authorities cited by the majority in finding that the admission of the pistol into evidence, although erroneous, was merely cumulative and was not decisive as to the guilt of the appellant.

Completely disregarding the pistol and the location where it was found, I would hold there is sufficient evidence in this case to support the verdict of the jury.

NOTE.—Reported in 287 N. E. 2d 860.