Commonwealth *v.* Strickland, Appellant.

Argued April 19, 1974. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*A. Benjamin Johnson, Jr.,* for appellant.

*John H. Isom,* Assistant District Attorney, with him *David Richman,* Assistant District Attorney, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, October 16, 1974:
Appellant, Charles Strickland, age 19, was convicted by a jury of murder in the first degree. After denial of appellant's post-trial motions, appellant was sentenced to life imprisonment. This appeal followed.[1] We vacate and remand.

---

[1] The Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp. 1974), is the source of our jurisdiction.

At trial appellant sought to have certain evidence suppressed as unconstitutionally seized.[2] The trial court ruled that appellant lacked standing to contest the search, and therefore did not decide the Fourth Amendment issues. Appellant challenges the trial court's conclusion that he lacked standing to question the legality of the search.[3]

At a suppression hearing conducted to determine the admissibility of the evidence in question, appellant testified that at the time of his arrest he maintained two residences. He related that during the week he lived with his grandmother at 707 East Jessup Street, Philadelphia, the searched premises, because of that location's proximity to his place of employment. He also stated that he spent weekends with his mother who lived at 5049 Hatfield Street, Philadelphia. Appellant contends he is protected by the Fourth Amendment at the searched premises due to his regular use of that residence.

The suppression court made no finding as to the credibility of appellant's claim to be a weekday resident at 707 East Jessup Street. The court apparently assumed that one is entitled to the protection of the Fourth Amendment only at one's principal residence. Relying upon the fact that appellant had given as his address 5049 Hatfield Street both when he was arrested and when he made his formal statement, the court decided that appellant's principal residence was

---

[2] The challenged evidence was a letter to a cousin appellant had written while in jail awaiting trial. In the letter, appellant made what may be a guilt-suggesting reference to a weapon matching the description of the gun used in the murder.

[3] Appellant also alleges he was not promptly arraigned as required by Pa. R. Crim. P. 118 (now 130), and that therefore the statement obtained by the police prior to arraignment should be suppressed. *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). Because of our disposition, we do not reach this issue.

not the East Jessup Street address. The court reasoned that appellant was merely a "temporary guest" there, and thus lacked standing to challenge the search.

To conclude, as did the trial court, that one is protected by the Fourth Amendment at only his principal home is directly contrary to the rationale of *Katz v. United States,* 389 U.S. 347, 88 S. Ct. 507 (1967), and numerous holdings of federal and state courts. The Supreme Court of the United States has repeatedly held that the Fourth Amendment does not protect particular places, but instead assures an individual that he will be free from unreasonable governmental intrusion into zones where he has a reasonable expectation of privacy. *Combs v. United States,* 408 U.S. 224, 92 S. Ct. 2284 (1972); *Mancusi v. Deforte,* 392 U.S. 364, 88 S. Ct. 2120 (1968); *Katz v. United States,* 389 U.S. 347, 88 S. Ct. 507 (1967).

Our Court has followed this rationale. In *Commonwealth v. Swanger,* 453 Pa. 107, 307 A.2d 875 (1973), Mr. Justice EAGAN, writing for the Court stated: "The Supreme Court of the United States has made it clear the Fourth Amendment protects people wherever the individual may harbor a reasonable expectation of privacy. See *Katz v. United States,* 389 U.S. 347, 88 S. Ct. 507 (1967). Once it is established the individual is within an area where he has a reasonable expectation of privacy he is entitled to be free from unreasonable intrusions by the Government. See Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868 (1968)." 453 Pa. at 110, 307 A.2d at 877. See *Commonwealth v. Platou,* 455 Pa. 258, 266, 312 A.2d 29, 34 (1973), cert. denied, 417 U.S. 976, 94 S. Ct. 3183 (1974).

These precedents make clear that the trial court erred in basing its analysis upon a determination that appellant was merely a "temporary guest" rather than a "resident." Fourth Amendment issues cannot be adequately resolved by the use of conclusory labels that

presuppose a result. Compare *Jones v. United States,* 362 U.S. 257, 265-66, 80 S. Ct. 725, 733-34 (1960). The appropriate analysis calls for a determination of whether appellant in these circumstances had a reasonable expectation of privacy based solely upon his own use of the searched premises.

Other jurisdictions have held that a person is protected by the Fourth Amendment at any residence where he has a reasonable expectation of privacy. For instance, in *Mitchell v. State,* 259 Ind. 418, 287 N.E.2d 860 (1972), the Supreme Court of Indiana reasoned: "A person may maintain more than one home or place of habitation with the expectation that both will be free from an unlawful intrusion. Appellant therefore possessed requisite standing to protest a warrantless search of either address." 259 Ind. at 423, 287 N.E.2d at 863 (citations omitted). See *Walker v. Peppersack,* 316 F.2d 119 (4th Cir. 1963); *Roberson v. United States,* 165 F.2d 752 (6th Cir. 1948);[4] *Pierson v. State,* 311 A.2d 854 (Del. 1973). See also *United States v. Harwood,* 470 F.2d 322 (10th Cir. 1972); *Creasy v. Leake,* 422 F.2d 69 (4th Cir. 1970); *United States v. Miguel,* 340 F.2d 812 (2d Cir. 1965); *Kluck v. State,* 37 Wis. 2d 378, 155 N.W.2d 26 (1967). Cf. *State v. Darwin,* 161 Conn. 413, 288 A.2d 422 (1971).

We therefore hold that a person is entitled to the protection of the Fourth Amendment at any residence where he has a reasonable expectation of privacy.

---

[4] In *Roberson,* the court stated: "The [Fourth Amendment does not] limit its protection to a single house or home. It is not unusual for a man to own two different houses, each of which is used by him at intervals as his home. The full purpose of the immunity for unreasonable search and seizure would be lost if the protection shifted from one home to another as the owner moved from one house to another, either in the regular pursuit of his business or for his own convenience or pleasure." 165 F.2d at 754-55 (citations omitted).

This holding is consistent with our pre-*Katz* decision in *Commonwealth v. Raymond*, 412 Pa. 194, 194 A.2d 150 (1963). There appellant sought to suppress evidence seized from a house in which he slept occasionally, never remaining more than a single night. We held *Raymond* lacked standing to contest the seizure. The infrequency, irregularity, and brevity of the appellant's visits made any expectation of privacy he might have had clearly unreasonable.

Here, appellant alleges that his grandmother's house was more than a place at which he occasionally spent the night. In contrast to the facts in *Raymond*, appellant claims he lived at the searched residence five nights a week, every week. In these circumstances, appellant's claim of regular and frequent use, if true, is sufficient to establish a justifiable expectation of privacy.

The trial court also concluded appellant was without standing because there was no evidence the letter was seized from the room in which appellant claims he slept. The court's assumption that appellant could not contest the constitutionality of a seizure from other areas of the residence is in conflict with the holding of the United States Supreme Court in *Bumper v. North Carolina*, 391 U.S. 543, 548 n.11, 88 S. Ct. 1788, 1791 n.11 (1968). In that case, a rifle used by all the members of the accused's family was seized from a common area of his family's home. The Supreme Court concluded that "there can be no question of the petitioner's standing to challenge the lawfulness of the search." We conclude that one is protected by the Fourth Amendment not only in one's own sleeping quarters, but in any place where one has a reasonable expectation of privacy. Cf. *Mitchell v. State*, 259 Ind. 418, 287 N.E.2d 860 (1972).

The Commonwealth argues that even assuming appellant had at one time lived at the East Jessup Street

address, he was not residing there at the time of the search and thus no reasonable expectation of privacy of his was violated by the police. Appellant's absence from the premises was due to his arrest and detention pending trial. Absence due to arrest and incarceration while awaiting trial is not of itself a sufficient basis upon which to conclude that the accused has abandoned any reasonable expectation of privacy in his home. To hold otherwise would make permissible warrantless searches of the homes of those awaiting trial and unable to post bond.

The Commonwealth also contends that appellant lacked standing because he had no interest in the item seized. In *Alderman v. United States,* 394 U.S. 165, 176-77, 89 S. Ct. 961, 968 (1969), the Supreme Court stated that where one has a protectible interest in the searched premises, he has standing to object to the admission of any evidence seized therefrom. "If the police make an unwarranted search of a house and seize tangible property belonging to third parties, . . . the homeowner may object to its use against him, not because he had any interest in the seized items as 'effects' protected by the Fourth Amendment but because they were the fruits of an unauthorized search of his house, which is itself protected by the Fourth Amendment." 395 U.S. at 176-77, 89 S. Ct. at 968. Again in *Brown v. United States,* 411 U.S. 223, 229, 93 S. Ct. 1565, 1569 (1973), the United States Supreme Court held that an interest in the premises by itself is sufficient to confer standing.

It must be concluded that the trial court employed an improper standard in determining appellant's standing.[5]

---

[5] On this record, we cannot agree with the trial court that the admission of the challenged evidence was error harmless beyond a reasonable doubt. See *Chapman v. California,* 386 U.S. 18, 87 S. Ct.

We therefore remand for a suppression hearing to determine the admissibility of the seized evidence. Upon remand, if the court decides that appellant has standing, it should then consider appellant's challenge to the constitutionality of the search. If it concludes that the search was improper, a new trial shall be awarded. Should the court hold the challenged evidence admissible, the judgment of sentence shall be reinstated.

In any appeal that may ensue the parties may raise any issues presented and undecided in the instant appeal. *Commonwealth v. Weeden,* 457 Pa. 436, 452, 322 A.2d 343, 351 (1974) ; cf. *Commonwealth v. Davis,* 455 Pa. 596, 599, 317 A.2d 211, 213 (1974).

Judgment of sentence vacated and the cause remanded for proceedings consistent with this opinion.

Mr. Chief Justice JONES dissents.

824 (1967) ; *Commonwealth v. Davis,* 452 Pa. 171, 305 A.2d 715 (1973) ; *Commonwealth v. Pearson,* 427 Pa. 45, 233 A.2d 552 (1967).