369 A.2d 857
**COMMONWEALTH of Pennsylvania**
**v.**
**William BOYKIN, Appellant.**

Superior Court of Pennsylvania.

Submitted April 2, 1976.

Decided Feb. 18, 1977.

156

Judith Widman and John W. Packel, Assistant Public Defenders, Philadelphia, for appellant.

Charles J. Devlin, Jr., and Deborah E. Glass, Assistant District Attorneys, Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

Appeal is taken to our Court from judgment of sentence rendered following jury trial and conviction on an indictment for rape.[1] Also charged and tried were indictments for possession of instruments of crime ("ACT", *supra*, § 907)[2] and unlawful restraint ("ACT", *supra*, § 2902). Sentence was suspended on the former and the latter was nolle prossed. Post-trial motions were filed and denied.

On May 8, 1975, while Stephanie Rowe was walking on 16th Street between Market and Chestnut in Philadelphia, she was approached by appellant, who inquired whether she might be a model. Answered in the affirmative, appellant informed Miss Rowe that he was a photographer with a studio at 17th Street and Locust and queried whether she cared to go there to peruse literature or pamphlets regarding his work. The prosecutrix was given to understand that a job offer might be forthcoming. Following a drink or two at the Warwick Hotel, the two went to appellant's studio, located at the end of a long hall three flights up from the street in a building otherwise vacated at this late evening hour. Miss Rowe was shown the literature and posed for Boykin, but soon became apprehensive because of appellant's request for poses in various modes of dress and undress. She left the studio area of appellant's premises and went into the outer office, finding the exit door locked. Appellant appeared with a knife poised and directed Rowe back to the studio area. Thereupon appellant compelled the young lady to remove her clothes, lie upon a couch, and engage in an act of sexual intercourse, which act he repeated once.

Prosecutrix then persuaded Boykin into letting her go into the common hall past the formerly-locked office

1. Violation of the "Crimes Code", Act of 1972, December 6, No. 334, 18 Pa.C.S. § 3121.

2. Appellant has not appealed this conviction.

door, to a bathroom. When she emerged, she ran ahead of Boykin, re-entered the office, shut and locked the door before he could re-enter. Thereupon she dressed and called the police. An arrangement was made whereby Rowe threw a pair of underpants to Boykin, who had removed himself some distance from the door, and then they descended the stairs, Rowe following and "armed" with scissors and a steam-iron. Boykin was able to open the street door to admit the police.

Police investigation was made, during which one of the officers found the knife, with which appellant had allegedly coerced prosecutrix, on a fire escape outside one of the windows of appellant's premises. The officer had gained access to the fire escape through the fire door, so marked, which opened off of the hallway common to the leased premises. The knife was seized.

Prior to commencement of trial, a hearing was held on appellant's motion to suppress the knife as evidence, which argument was based on the allegation that it was the product of a warrantless and illegal search. That this motion was denied by the court below is the first allegation of error before us. It is unnecessary to reiterate the legion of cases regarding lack of warrant and consent to search. This issue is controlled by the "plain view" doctrine, expounded by the United States Supreme Court in *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). It is quite clear in the instant case that the officers were present in answer to an emergency call placed by the victim. The knife on the fire escape was found in plain view during the routine investigation. Nor may appellant claim Fourth Amendment protection for himself in respect to an area in which he has no possessory interest. *Commonwealth v. Strickland*, 457 Pa. 631, 326 A.2d 379 (1974). The fire escape entrance used by the police was a door from the common hallway. While a tenant may have the right to use both hall and fire escape, neither is a

part of the demised premises under his possession or control. The fallacy of appellant's argument is made more plain were we to suppose that the knife had fallen through the fire escape's grating, which supposition is not unreasonable because of appellant's admission at trial that he had disposed of the knife by tossing it out the window. The knife on the ground outside the building would not be in an area protected by one's basic Constitutional right to be free from unreasonable searches and seizures. We hold that the lower court did not err in denying the motion to suppress.

■ Appellant's second allegation of error stems from the cross-examination of Officer James Slavin, one of the policemen who responded to Miss Rowe's call and the officer who took custody of the aforementioned knife and subsequently turned it over to the evidence custodian. When defense counsel asked "Was the knife ever turned over to the laboratory technicians? That is, down at the Police Administration Building for some type of analysis as to whether or not there was any blood or chemicals or traces on it?", Commonwealth objection was sustained on the grounds that the question went beyond the bounds of direct examination and was irrelevant. We believe that the lower court judge properly limited the examination of Slavin because there was no testimony that the instrument had been bloodied or that an analysis was in any way material. This particular knife had been introduced only as the weapon the threatened use of which weapon coerced or forced the prosecutrix to submit to appellant's desires, which had been identified as such by prosecutrix, and which also had been identified by appellant as his knife. Questions regarding analysis were indeed irrelevant and too far afield, and no error resulted from the court's exercise of discretion in thus limiting the examination of witnesses. *Commonwealth v. Bailey,* 450 Pa. 201, 299 A.2d 298 (1973).

■ Appellant's final allegation of error below goes to the failure of the court to grant a mistrial following certain comments and questions by the prosecuting attorney. While numerous instances are cited during the cross-examination of appellant, only one merits discussion, and it is the only instance from which defense counsel requested mistrial, the others being in no way comprehensible as sources of prejudicial error. The pertinent questioning is as follows:

"Q. Okay. That's because you were going to go to 4601 North Broad and then you were going to catch a subway to Juniper Street, right?

A. Well, after leaving my parents' home.

Q. Um hum. But on the way, you just happened to run into this young lady that you were attracted to: isn't that correct?

A. Well, I didn't happen—

Q. Well, you made it your purpose to surround her?

A. No, I said that she had what I considered a very loud yellow attire outfit on.

Q. So?

A. Well, I was very attracted to it. It was attravtive to my eye. (sic)

Q. Well, you said you didn't just happen to surround her or that you were looking for a model that night?

A. I was not looking for a model that night.

Q. Or looking for a young lady to come back and have a little sexual intercourse with?

A. No, Sir, my mind was open to anyone whether they was male or female.

Q. Oh, you were looking for a male to come back to the office to have sexual intercourse with?

"Mr. Hanford: That's objected to, Sir, as to the male comment. That is an improper comment by the prosecutor.

Mr. Castille: Well, I'm just asking him. I'm trying to find out what he meant, Your Honor.

THE COURT: Well, just ask him the question.

By Mr. Castille:

Q. So that your mind was open that night to a male or a female—we'll say a model?

A. It was not a particular person geared towards modeling. My mind stays open. I don't close it to male or female or dogs or cats.

Q. Well, were you looking for a cat to have sexual intercourse?

Mr. Hanford: Objection, Your Honor.

THE COURT: Please, now let's rephrase it.

By Mr. Castille:

Q. Well, were you—

Mr. Castille: I didn't get the ruling on the objection.

THE COURT: Let's go on.

Mr. Hanford: May I see the Court at side bar?

Mr. Castille: I withdraw the question.

Mr. Hanford: May I see the Court at side bar?

(The following colloquy occurred at side bar.)

Mr. Hanford: I'm making a motion for a mistrial as the result of the series of questions by the prosecutor. I think it's quite improper.

THE COURT: I don't think it's improper.

Mr. Hanford: What he is doing is casting dispersions on the defendant in the form of a question." (sic)

■■ The questions asked by the attorney for the Commonwealth were certainly not models for emulation.

The problem posed by queries of counsel which are of questionable propriety are akin to that posed by improper remarks of counsel in his summation to the jury. The issue becomes: was the effect of the inquiries by counsel "such that its unavoidable effect would be to prejudice the jury forming in their minds a fixed bias and hostility toward the defendant, so that they could not fairly weigh the evidence and render a true verdict. *Commonwealth v. Flaherty*, 167 Pa.Super. 19, 74 A.2d 506." *Commonwealth v. Drischler*, 175 Pa.Super. 74, 78, 103 A.2d 467 (1954). Instantly the appellant had testified that he had gone forth from his studio to locate a model and not to find one whom he could use for sexual purposes. The attorney for the Commonwealth was trying to find out whether the appellant's search was primarily for sex or for his business of servicing models. The answers given by the appellant evoked the rather bizarre follow up questions by the prosecutor. As with improper remarks, so with improper questions it is largely for the trial judge considering among other things the atmosphere of the trial whether or not the questions are so prejudicial as to require a new trial solely on that ground, *Commonwealth v. Feiling*, 214 Pa.Super. 207, 252 A.2d 200 (1969). We find no abuse of discretion in the trial judge's determination that the questions asked by the attorney for the Commonwealth were not so imflammatory in the atmosphere of the trial in and of themselves to warrant the grant of a new trial.

Judgment of sentence affirmed.

HOFFMAN, PRICE and SPAETH, JJ., concur in the result of this opinion.