No. 96,091

STATE OF KANSAS, *Appellee*, v. KELLY B. STOWELL, *Appellant*.
(182 P.3d 1214)

Opinion filed May 16, 2008.

*Michelle A. Davis*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Keith E. Schroeder*, district attorney, argued the cause, and *Benjamin J. Fisher*, senior assistant district attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: The district court denied defendant Kelly Stowell's motion to suppress methamphetamine seized during his traffic stop. A majority of the Court of Appeals panel reversed on three separate grounds in *State v. Stowell*, No. 96,091, unpublished opinion filed July 20, 2007. The State's petition for review requested that we reverse the Court of Appeals on only one of that court's stated suppression grounds: the inevitable discovery doctrine. We granted review because an earlier panel of the Court of Appeals appears to have reached dissimilar results with similar facts in the inevitable discovery context. See *State v. Smith*, No. 92,836, un-

published opinion filed October 21, 2005, *rev. denied* 280 Kan. 990 (2006).

We need not plumb this subject in depth to resolve the split between the two panels, however, simply because we find no record evidence of postarrest jail inventory search procedures to support the doctrine's application. Accordingly, we hold suppression was proper, affirm the Court of Appeals, reverse the district court, and remand for further proceedings.

## FACTS

Hutchinson Police Officer Josh Orem stopped Kelly Stowell in his truck for a traffic infraction in the early morning of July 23, 2004. Orem smelled the odor of alcohol and conducted field sobriety tests. Officer Mike Robinson arrived during the tests. Orem told Robinson to run a check for a valid license and outstanding warrants, which revealed that Stowell was driving on a suspended license and was the subject of an outstanding warrant for failure to pay child support. The warrant called for a $750 bond.

Stowell was arrested on the warrant; Orem patted him down and removed brass knuckles from his pocket. Orem then put Stowell in the back of his police car parked approximately 15 feet from the truck. Robinson asked Stowell if he wanted Robinson to get his keys from the truck. According to Robinson, Stowell wanted his keys. Although the exact sequence is unclear, at some point Robinson shone his flashlight into Stowell's truck and saw a handgun protruding from under the armrest in the center console. Robinson then opened the door and saw a second handgun in the driver's side door.

Robinson told Orem of the two guns and showed their locations. Orem removed the guns, returned to his police car, and *Mirandized* Stowell. According to Orem, Stowell agreed to talk. Orem requested consent to retrieve the guns; he also stated that Stowell wanted his wallet from the truck.

According to Orem, because it was about to rain and also because the truck was parked downtown near three bars, Stowell consented to rolling up the windows, locking the doors, and retrieving the keys. Orem found the keys in the ignition and noticed

a small black pouch on the key ring. He removed the keys from the ignition and opened the pouch, finding 16 baggies of methamphetamine. Stowell denied that the pouch was his and that he knew anything about the baggies. Orem then searched Stowell's wallet, finding $774, and searched the truck, finding another $6.

Stowell contradicted Orem on several key points. According to Stowell, he told the officers to leave the keys in the truck because his girlfriend would pick it up later and that he did not consent for Orem to enter it to get the guns, wallet, and keys.

Stowell was charged with possession of methamphetamine with intent to sell, possession of methamphetamine without drug tax stamps, criminal use of a weapon, and driving while suspended.

Stowell moved to suppress the physical evidence from the stop, but the district court denied the motion, finding that the methamphetamine inevitably would have been discovered when Stowell's personal property was inventoried.

A jury convicted Stowell of possession of methamphetamine with intent to sell, possession of methamphetamine, possession without tax stamps, criminal use of a weapon, and possession of drug paraphernalia as a result of the July 23 stop and an August 4 incident that is not at issue in this appeal. He was sentenced to 18 months' probation, with 24 months' postrelease supervision.

Stowell appealed, arguing, *inter alia*, that the district court erred in denying the motion to suppress the evidence from the July 23 stop.

A majority panel of our Court of Appeals reversed the denial of the motion to suppress the evidence from the July 23 stop. It concluded, among other things, that the State failed to demonstrate the inevitability of the discovery of methamphetamine in the pouch. *Stowell*, slip op. at 10. The panel reversed Stowell's convictions for possession of methamphetamine with intent to sell and possession of methamphetamine without tax stamps but upheld his conviction for criminal use of a weapon. Slip op. at 12.

The State petitioned for review, arguing the panel majority erred in not upholding the evidence's admissibility under the inevitable discovery doctrine. This court granted review; our jurisdiction is pursuant to K.S.A. 20-3018(b) and K.S.A. 22-3602(e).

## ANALYSIS

Issue: *The district court erred in holding that the methamphetamine would have been inevitably discovered.*

The State generally argues that the methamphetamine should not have been suppressed by the Court of Appeals panel majority because it would have been inevitably discovered, *i.e.*, when Stowell was booked into jail and his possessions were subject to an inventory search. Stowell generally responds that the jailhouse booking and inventory search, and resultant discovery of the methamphetamine, were not inevitable because he could have bonded out before the search.

Our analysis begins with an acknowledgment that when reviewing any motion to suppress evidence, an appellate court reviews the factual underpinnings of a district court's decision by a substantial competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate review. When, as here, the material facts are not in dispute, the suppression question is solely one of law. *State v. Ingram*, 279 Kan. 745, 750-51, 113 P.3d 228 (2005).

In the more specific area of inevitable discovery, we have held that the burden is on the State to demonstrate ultimate admissibility: "The test under the inevitable discovery rule is that, if the prosecution establishes by a preponderance of the evidence that the unlawfully obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible." 279 Kan. 745, Syl. ¶ 1.

The panel majority determined that the discovery of drugs was not inevitable because jail and a preincarceration inventory of Stowell's personal effects were not inevitable. *Stowell*, slip op. at 9. It also held that the officers properly secured the truck pursuant to K.S.A. 8-1573(a); however, "once retrieved the keys would have been turned over to Stowell and not been the subject of any further attention or the discovery of the drugs unless Stowell's personal

property was inventoried in advance of him being placed in jail."
Slip op. at 8-9.

The panel majority then concluded that Stowell's possessions
would not necessarily have been inventoried:

"Upon being detained on the [outstanding child support] warrant, Stowell would
have been released upon posting an appropriate bond. The child support warrant
called for a cash bond in a low amount. Stowell had a significant amount of cash
with him when he was arrested. The State does not suggest that his ready funds
were inadequate to satisfy the bond requirement. . . . Upon posting the appro-
priate bond and acknowledging receipt of the traffic citation, Stowell would have
been free to leave with his keys to retrieve his truck." Slip op. at 9-10.

Judge Hill dissented on the inevitable discovery issue, stating:

"Even if the truck had been locked by the officers and left at the place of the
defendant's arrest, the key ring with the drugs would have been taken with the
defendant to the station; there, the pouch would have been searched along with
the defendant's other belongings. In my view this is inevitable discovery, and I
would not reverse this case." Slip op. at 13 (Hill, J., concurring and dissenting).

The State now essentially argues that the majority's conclusion
about Stowell's imminent bonding out is speculative and inconsis-
tent with the outcome in *State v. Smith*. There, the police illegally
searched the defendant after he was arrested, and the State argued
that cocaine found on his person inevitably would have been dis-
covered at booking and during an inventory search at the jail. The
Court of Appeals agreed. Slip op. at 12-16.

The facts and arguments are similar to those in the instant case.
Smith was arrested at 4 a.m., and Stowell was arrested around
midnight. Like Stowell, Smith argued he could have bonded out
and therefore no inventory search would have occurred. Smith re-
lied upon K.S.A. 22-2901, which requires postarrest access to a
magistrate without unnecessary delay. However, the Court of Ap-
peals pointed out that the statute does not provide a person the
opportunity to bond out as soon as he or she is arrested and taken
into custody. Rather, it held that the statute was intended to pro-
vide access to a magistrate with reasonable promptness to prevent
prearraignment detention for the purposes of securing a confes-
sion. *Smith*, slip op. at 15. Because Smith was arrested around 4
a.m., the court concluded he would have had to spend at least one

night in jail before he could see a magistrate the following day. Slip op. at 15.

We need not decide if the majority's conclusion about Stowell's imminent bonding out was speculative. Nor do we need to otherwise reconcile the different Court of Appeals' outcomes in *Smith* and *Stowell*. Resolution of the instant case is more fundamental. More particularly, the State has the burden of showing by a preponderance of the evidence that the discovery of the methamphetamine was inevitable. See *Ingram*, 279 Kan. 745, Syl. ¶ 1. But a detailed review of the record reveals that the State did not present any evidence that Stowell would have been booked into jail or present any evidence of jail procedures. Accordingly, it did not establish that Stowell's possessions would have been searched and the key-ring pouch of methamphetamine inevitably discovered as part of the jail's inventory search procedure.

By contrast, in *Smith* an officer testified that during his career he transported people to the jail over 500 times, that the jail always followed the same search procedure, and that the procedure was in fact followed with defendant Smith. The Court of Appeals rejected defendant's argument that this testimony was insufficient evidence of the inventory search procedures. Slip op. at 14-15 (citing *Ingram*, 279 Kan. 745).

Similar to *Smith,* in *Ingram* an officer testified that the procedures used when taking someone into the secure area of the law enforcement center required that he or she be searched for any weapons or contraband before being allowed in the interview rooms or in the main facility at the jail. He further testified that after the person empties his or her pockets, the corrections staff confirms that all items have been removed from the pockets, shoes, and coat. In affirming both lower courts, this court held that the State had met its burden by showing "by a preponderance of the evidence that the [illegally seized] drugs would have been inevitably discovered by corrections officers at the Center." 279 Kan. at 753; see also *State v. Payne,* 273 Kan. 466, 477, 44 P.3d 419 (2002) (denial of motion to suppress crack cocaine actually found in defendant's pocket in jail because search was reasonable custodial search for weapons and evidence).

The judgment of the Court of Appeals suppressing the methamphetamine found in the key-ring pouch is affirmed. The judgment of the district court is reversed, and the case is remanded.