NOT DESIGNATED FOR PUBLICATION

No. 115,605

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

DARLA CONNERS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed December 23, 2016. Affirmed.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellant.

*Shannon S. Crane*, of Hutchinson, for appellee.

Before POWELL, P.J., PIERRON and HILL, JJ.

*Per Curiam*:  The State brings this interlocutory appeal challenging the district court's granting of Darla Conners' motion to suppress evidence obtained from the search of her home. A few days after U.S. Marshals arrested Conners and her roommate, Buhler Police Chief William Tracy entered her rental home at the request of the landlord without a search warrant. Using information gathered during that initial entry, Tracy obtained a warrant and conducted a more thorough search which yielded evidence of marijuana cultivation. The State subsequently charged Conners with multiple drug crimes. Conners moved to suppress the evidence, arguing that Tracy's initial entry into her rental house

1

violated her constitutional rights. The court agreed, holding that the landlord did not have either the actual or apparent authority to consent to the search of Conners' rental home, and granted Conners' motion.

On appeal, the State argues that the district court erred in suppressing the evidence for three reasons: (1) Conners did not have a reasonable expectation of privacy in the rental house and, thus, lacked standing to challenge the search; (2) the district court erred in applying the exclusionary rule to suppress the evidence; and (3) the evidence seized from Conners' rental home would have inevitably been discovered just a few days later as the landlord would have lawfully been able to assume possession of the premises. We disagree and affirm the district court's granting of Conners' motion to suppress.

FACTUAL AND PROCEDURAL BACKGROUND

On January 31, 2014, U.S. Marshals, accompanied by Tracy, arrested Conners and her roommate, John Galentine, at their rental home in Buhler, Kansas, a small community located near Hutchinson. The couple was to be held for subsequent extradition to Pennsylvania.

Within a few days, Lewayne Bartell, the rental house's owner, heard a rumor that U.S. Marshalls had arrested Conners and Galentine at the rental house, and on February 3, 2014, he went to the house to determine whether anyone still lived there. On arrival, Bartell approached the rental house's front door and knocked on it. When he did not receive any response, he walked around the house to the backyard, where he saw a pile of leaves, bags, and trash. At that moment, he did not know the leaves were marijuana as Bartell did not open the trash bags or go through them. Although he expected tenants to keep the backyard cleaner, Bartell did not find the yard's contents unusual or a reason to call the police.

2

Without obtaining permission from either Conners or Galentine, Bartell then entered the rental house through the front door, which was unlocked. Once inside, Bartell walked through the house and noticed it was still furnished and did not appear vacant. In the basement, he discovered what appeared to have been a greenhouse. Bartell found several plants, which he believed were marijuana, and paper pots where the plants had been grown. Bartell then exited the house and returned to the backyard. This time, he opened one of the trash bags and found marijuana. After leaving the rental house, Bartell phoned Tracy and asked him to come check out the flowers growing in the basement.

When Tracy arrived, he walked around the outside of the rental house. In the backyard, he found 10 to 15 trash bags against the back of the house. Some of the bags were open, so he looked inside one and saw marijuana leaves. Tracy then entered the house and went directly to the basement. There, he found lights hanging from the ceiling, a ventilation system, pots, and several plants lying on the floor. At that point, Tracy locked the house and left. Before leaving, Tracy moved one or two of the trash bags containing marijuana from the backyard and set them inside the back door. He also taped the doors with evidence tape.

Based on this information, Tracy obtained a search warrant the next day. On the day after that, he and two drug task force agents conducted a search of the rental house. They seized 131 stems grown in potting media, two large black plastic bags containing green leafy vegetation, 1000-watt light bulb boxes, a power vent connected to the chimney, clonnex rooting compound, calendars with days marked on them, and mailing address labels showing Galentine resided at the rental house.

The State subsequently charged Conners with cultivation of marijuana and possession of drug paraphernalia with intent to cultivate marijuana. Conners moved to suppress the evidence seized from the rental house, arguing Tracy conducted an illegal search in violation of her constitutional rights. She contended Bartell lacked authority to

consent to Tracy's warrantless entry into her home and further contended Bartell lacked authority to enter her home and was acting as a government agent. She also asserted no probable cause supported the search warrant.

The district court held a suppression hearing at which the State offered the testimony of Bartell and Tracy. Conners did not present any testimonial evidence but admitted into evidence documentation of her monthly rent payment history.

Bartell explained he had been a landlord for 20 years and owned 14 properties in Buhler. He recalled Conners and Galentine began renting the house in June 2013 and described them as always very timely in paying their monthly rent. Bartell stated he left the doors unlocked after leaving the rental house and testified that he did not escort Tracy through the house. Bartell claimed he specifically told Tracy about the trash bags containing marijuana in the backyard. He also testified he told Tracy that somebody should come down there and take a look because there was stuff there they probably needed to see.

Tracy testified he had been in law enforcement for 27 years. He explained that when executing the arrest warrants for Conners and Galentine, he and a U.S. Marshal entered the rental house through the front door while two other U.S. Marshals went to the back of the rental house. Tracy stated the U.S. Marshals did not alert him that bags of marijuana were in the house's backyard. Tracy further stated that at the time he entered the house and stood in its kitchen, he did not observe anything odd in the house.

Tracy also testified that Bartell was present during his initial entry into the rental house. According to Tracy, they entered the house through the front door, using a key to unlock it. Before arriving at the rental house, Tracy did not suspect any illegal activity, and the trash bags containing marijuana were not visible from the house's front side. Tracy claimed Bartell did not tell him marijuana was present at the house, and he

admitted that although he knew Conners lived at the rental house, he did not obtain Conners' consent before entering.

At the conclusion of evidence, the State argued suppression of the evidence was improper because Bartell had authority to consent to Tracy's entry into the rental house and because the evidence of marijuana cultivation was in plain view. Alternatively, the State asserted Conners did not have a reasonable expectation of privacy in the house as a result of her and Galentine's failure to timely pay February rent.

Conversely, Conners maintained she had a reasonable expectation of privacy in the curtilage adjacent to the rental house, highlighting Tracy's testimony that he was unable to see any contraband from the public roadway and only observed it on entry to the backyard. Furthermore, she argued Bartell did not have authority to consent to Tracy's entry into the backyard or house and that no exigent circumstances existed to otherwise justify Tracy's warrantless entry.

The district court granted Conners' motion to suppress. In its written order, the district court made several factual findings:

- Conners was current on rent.
- Bartell went to Conners' rental house after hearing a rumor that she had been arrested by federal marshals.
- Bartell entered the rental house without any indication Conners had abandoned it.
- Tracy knew Conners was arrested on January 31, 2014.
- Three days after Conners' arrest, Bartell called Tracy and requested he come search the rental house.

- Bartell specifically asked Tracy to come check out flowers growing in the house's basement.
- Bartell gave Tracy consent to search Conners' rental house.
- Bartell supplied Tracy with a key to the rental house.

Based on its factual findings, the district court found that Bartell, as the landlord, lacked both actual and apparent authority to consent to a search of the rental house. It concluded that Tracy had conducted a warrantless search of Conners' home and the State had failed to demonstrate a valid exception to the warrant requirement.

The State timely appeals.

DID THE DISTRICT COURT ERR IN GRANTING CONNORS' MOTION TO SUPPRESS?

When reviewing a district court's ruling on a motion to suppress, we apply a bifurcated standard of review. First, without reweighing the evidence, we assess whether the district court's factual findings are supported by substantial competent evidence. Second, we examine de novo the district court's ultimate legal conclusions drawn from those facts. *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014). "The State bears the burden to demonstrate a challenged search was lawful." *State v. Pettay*, 299 Kan. 763, 768, 326 P.3d 1039 (2014).

The State's principal argument is that Conners did not have a reasonable expectation of privacy in the rental house, meaning she lacks standing to challenge a search of the house. Alternatively, even if Conners has standing to challenge the search, the State contends the district court erred in applying the exclusionary rule to suppress the evidence because law enforcement acted in good faith by merely responding to a request by the landlord and property owner to search the premises. The State also argues that any evidence uncovered illegally at the time would have inevitably been discovered as the

landlord and owner would have been lawfully entitled to enter the premises in a few days. We will examine the State's arguments in order.

1.      *Did Conners have standing to challenge Tracy's warrantless entry into the rental house?*

The State first argues Conners did not have a reasonable expectation of privacy in the rental house and raises a question of whether Conners had proper standing to challenge law enforcement's initial entry into the rental home. A criminal defendant must have standing to challenge a search or seizure, and the burden is on the defendant to show an expectation of privacy in the property searched. *State v. Talkington*, 301 Kan. 453, 476, 345 P.3d 258 (2015).

The Kansas Supreme Court has explained that the courts have used the reasonable expectations test, as articulated in *Katz v. United States*, 389 U.S. 347, 361, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (Harlan, J., concurring), to determine whether a defendant has standing to challenge a search or seizure. *Talkington*, 301 Kan. at 461-62. "[A] search . . . occurs under the Fourth Amendment when:  (1) the government obtains information by physically intruding on a constitutionally protected area, *i.e.*, persons, houses, papers, or effects, [citation omitted]; *or* (2) invades '"a subjective expectation of privacy that society recognizes as reasonable."'" 301 Kan. at 462. "[T]he United States Supreme Court [has subsequently] clarified that a traditional property rights baseline should be applied to Fourth Amendment cases as well." 301 Kan. at 462; see *Florida v. Jardines*, 569 U.S. ___, 133 S. Ct. 1409, 1417, 185 L. Ed. 2d 495 (2013).

As the resident of a dwelling that is akin to a traditional home, a tenant possesses a reasonable expectation of privacy throughout the interior of a leased single-family house. See *Payton v. New York*, 445 U.S. 573, 590, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980) ("[T]he Fourth Amendment has drawn a firm line at the entrance to the house."). Further,

7

the area "'immediately surrounding and associated with the home'" is the curtilage and is considered "'part of the home itself for Fourth Amendment purposes.'" *Jardines*, 133 S. Ct. at 1414 (quoting *Oliver v. United States*, 466 U.S. 170, 180, 104 S. Ct. 1735, 80 L. Ed. 2d 214 [1984]). "It harbors the intimate activity associated with the sanctity of a person's home and the privacies of life." *State v. Fisher*, 283 Kan. 272, Syl. ¶ 1, 154 P.3d 455 (2007).

The State does not contend that Conners, under normal circumstances, did not have a reasonable expectation of privacy in the rental house and its curtilage. Rather, the State's argument is that because Conners and Galentine had not paid rent for the month of February at the time of Tracy's initial entry and were incarcerated, Conners had a diminished expectation of privacy in the rental house. We disagree.

Contrary to the State's argument, a reasonable person could have concluded based on the evidence that Conners was current on rent. At the suppression hearing, Bartell initially testified that Conners and Galentines' lease agreement required them to pay rent by the first of each month. Bartell then discussed their payment history, which showed they paid rent between the 5th and 9th of each month. Despite the express language of the lease agreement, Bartell considered their payments timely. Although Conners and Galentine had not paid February's rent when Tracy initially entered the rental house on February 3, they were not yet untimely in paying.

Moreover, there is insufficient evidence to support the proposition that Bartell had retaken possession of the property. There is no evidence in the record that indicates Bartell had initiated any eviction proceedings or otherwise demonstrated an intention to retake possession of the rental property. Also, as Conners' counsel pointed out to the district court, Kansas' landlord-tenant act only considers a tenancy abandoned once the tenant has been in default for nonpayment of rent for 10 days and has removed a substantial portion of his or her belongings. See K.S.A. 58-2565(b). Bartell testified at the

8

suppression hearing that the rental house was not vacant and Conners had not been in default for nonpayment of rent for 10 days at the time Tracy entered the home. Therefore, substantial competent evidence supports the district court's factual finding that Conners was still current on rent and had not yet abandoned the property.

Having determined that substantial competent evidence supports a finding that Conners was a current tenant of the rental house, it becomes clear that she had a reasonable expectation of privacy in the rental house. See *Pennsylvania. v. Strickland*, 457 Pa. 631, 637, 326 A.2d 379 (1974) (finding defendant's absence due to arrest and incarceration is not "a sufficient basis upon which to conclude that the accused has abandoned any reasonable expectation of privacy in his home"). Thus, Conners had standing to challenge Tracy's initial entry and search of the rental house.

2.      *Did an exception to the exclusionary rule allow for admission of the evidence?*

For the first time on appeal, the State also contends the district court erred in applying the exclusionary rule to suppress the evidence seized from Conners' rental home. Unfortunately, it appears the State's argument is not properly before us because typically, an issue not raised before the district court cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). While there are exceptions that allow for consideration of newly raised issues despite the general rule that they may not be asserted for the first time on appeal, *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014), an appellant who wishes to raise an issue for the first time on appeal must proactively invoke an exception and explain why the issue is properly before us. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015); Kansas Supreme Court Rule 6.02(a)(5) (2015 Kan. Ct. R. Annot. 41). In fact, our Supreme Court has warned that litigants who fail to comply with Rule 6.02(a)(5) risk having issues deemed waived or abandoned. *State v. Williams*, 298 Kan. 1075, 1085, 319 P.3d 528 (2014). Later, in

9

*Godfrey*, 301 Kan. at 1044, the court noted that "[w]e are now sufficiently post-*Williams* that litigants have no excuse for noncompliance with Rule 6.02(a)(5)."

The State failed to comply with Rule 6.02(a)(5). In its appellate brief, the State acknowledges it failed to raise the argument below that an exception to the exclusionary rule allows for admission of the evidence seized from Conners' rental home, but it makes no effort to articulate any exception to the general rule. Further, the State fails to otherwise explain why this issue is properly before us or why it should be considered for the first time on appeal. Accordingly, because the State failed to comply with Rule 6.02(a)(5), it has waived or abandoned this argument.

3.      *Would the evidence seized by Tracy have been inevitably discovered?*

As a final point, the State contends law enforcement would have inevitably discovered the evidence suppressed by the district court. The State argues Conners would have relinquished any privacy right in the rental house within 1 week of Tracy's initial entry, at which point the evidence still would have been inside the house, and law enforcement would have lawfully seized it, presumably by entering with Bartell's consent.

If the prosecution can establish by a preponderance of the evidence that otherwise unlawfully obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible under the inevitable discovery doctrine. *Nix v. Williams*, 467 U.S. 431, 444-47, 104 S. Ct. 2501, 81 L. Ed. 2d 377 (1984) (adopting doctrine in context of Sixth Amendment violation and noting comparable considerations in applying inevitable discovery to Fourth Amendment violations); *State v. Ingram*, 279 Kan. 745, 750, 113 P.3d 228 (2005) (doctrine applied to Fourth Amendment violation). The State has the burden to "demonstrate ultimate admissibility." *State v. Stowell*, 286 Kan. 163, 166, 182 P.3d 1214 (2008). Importantly, "inevitable discovery involves no

10

speculative elements but focuses on demonstrated historical facts capable of ready verification or impeachment." *Nix*, 467 U.S. at 444 n.5. "[T]he inevitable discovery exception does not invite speculation about the possible series of events under which the evidence may have been discovered, but requires an affirmative showing of a reasonable probability that the evidence would inevitably be discovered through lawful means already initiated when the seizure was made." *State v. Mollett*, No. 97,999, 2008 WL 3852167, at *12 (Kan. App. 2008) (unpublished opinion), *rev. denied* 287 Kan. 768 (2009).

Conners contends the State failed to meet its burden to establish that the evidence would have been inevitably discovered, regardless of the illegal search. She highlights that no evidence showed the seized evidence would have remained in the residence after her arrest, asserting that she could have had others remove the evidence from the house after her arrest. Conners also concludes that the State's argument that the police would have inevitably discovered the evidence through lawful means is a mere supposition.

As already established, substantial competent evidence supports the district court's factual finding that Conners was current on rent. Thus, a conclusion that Conners had relinquished any privacy right in the rental house is contrary to the evidence and would require us to engage in improper reweighing of the evidence. See *Neighbors*, 299 Kan. at 240. Substantial competent evidence also supports the district court's factual finding that Bartell told Tracy only that flowers were growing in the basement. Without further information of illegal activity, any application for a search warrant would have been denied for lacking probable cause. In light of the district court's factual findings, it appears the State failed to present evidence to support application of the inevitable discovery exception. The district court did not err in granting Conners' motion to suppress.

Affirmed.

11