NOT DESIGNATED FOR PUBLICATION

No. 115,444

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

RICKEY B. MARKS,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed June 9, 2017.
Affirmed.

*Steven D. Alexander*, of Kanas City, for appellant, and *Rickey B. Marks*, appellant pro se.

*Jennifer S. Tatum*, assistant district attorney, *Mark Dupree*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before ARNOLD-BURGER, C.J., GREEN and MCANANY, JJ.

*Per Curiam*:  In 2008, Rickey B. Marks was convicted of first-degree
premeditated murder for stabbing his wife to death. Marks' conviction was affirmed on
appeal by our Supreme Court in *State v. Marks*, 297 Kan. 131, 298 P.3d 1102 (2013). In
2014, Marks moved under K.S.A. 60-1507, raising nine specific issues, including claims
of ineffective assistance of counsel; abuse of trial court discretion; ineffective assistance
of appellate counsel; and cumulative error. The trial court held a full evidentiary hearing
on Marks' motion which rejected Marks' arguments and denied his K.S.A. 60-1507
motion. Marks appeals, raising claims of ineffective assistance of counsel and abuse of

1

trial court discretion. For reasons set forth below, we reject Marks' arguments. Accordingly, we affirm the trial court's denial of Marks' K.S.A. 60-1507 motion.

*Underlying Criminal Conviction*

"On October 11, 2008, Rozeta Marks was stabbed eight times in her chest, arm, and back while driving to a store with her husband, Rickey Marks . . . Marks was ultimately charged with and convicted of first-degree premeditated murder." *State v. Marks*, 297 Kan. 131, 132-33, 298 P.3d 1102 (2013). Marks was sentenced to life in prison with a minimum mandatory sentence of 25 years. 297 Kan. at 134.

On direct appeal, Marks argued prosecutorial misconduct; challenged the admissibility of particular evidence not relevant to this appeal; and argued that the State failed to comply with statutes mandating that it provide Marks with personal copies of discovery. Our Supreme Court held that the prosecutor engaged in misconduct, but the misconduct did not amount to reversible error. The court also held that Marks was statutorily entitled to the discovery but found that the error was harmless. Accordingly, Marks' conviction and sentence were affirmed by our Supreme Court. See *Marks*, 297 Kan. at 150-51.

*K.S.A. 60-1507 Motion*

Later, Marks filed a K.S.A. 60-1507 motion in Wyandotte County District Court. Marks' motion was based on claims of unconstitutional jury instructions; ineffective assistance of trial counsel; and ineffective assistance of appellate counsel. Marks asserted that police reports or hospital records or both existed that would show that his victim had used a knife in a violent way in the 1990s and that his trial counsel was ineffective in failing to investigate the reports or records in support of a self-defense theory of defense.

2

Marks also submitted a memorandum in support of his motion. Marks listed nine issues in his memorandum—(1) ineffective assistance of trial counsel; (2) ineffective assistance of trial counsel for failing to object to the trial court's failure to clarify the State's closing argument on request from the jury; (3) ineffective assistance of counsel for failing to hire an expert to testify to Marks' frame of mind; (4) ineffective assistance of appellate counsel for failing to preserve and present certain issues; (5) prosecutorial misconduct; (6) trial court error based on failing to appoint Marks substitute trial counsel; (7) ineffective assistance of trial counsel based on the conflict alleged in Marks' motion to substitute counsel; (8) trial court error in allowing the jury to rely on inadequate theories of law; and (9) cumulative error depriving Marks of the right to a fair trial.

The trial court appointed counsel to represent Marks in his K.S.A. 60-1507 motion. Later, the trial court held a full evidentiary hearing on Marks' motion. Marks' counsel argued only two of the nine issues raised in his motion. Marks' counsel determined that only those two issues had merit. Still, Marks requested that all nine issues be considered. Accordingly, the trial court addressed all nine issues from Marks' memorandum in support of his motion. In denying Marks' motion, the trial court stated:

> "The Court, upon a review of the issues listed in the pro se Memorandum, the testimony and arguments by trial counsel and counsel during the argument of this habeas corpus motion, exhibits offered during the motion and transcripts of the trial and pretrial motions, finds that this Motion should be denied. Marks has failed to establish that either trial counsel or appellate counsel were ineffective and failed to establish any trial court errors sufficient to require a new trial."

*K.S.A. 60-1507 Standard of Review*

When a criminal defendant files a K.S.A. 60-1507 motion, a trial court has three options:

"'(1) The court may determine that the motion, files, and case records conclusively show the prisoner is entitled to no relief and deny the motion summarily; (2) the court may determine from the motion, files, and records that a potentially substantial issue exists, in which case a preliminary hearing may be held. If the court then determines there is no substantial issue, the court may deny the motion; or (3) the court may determine from the motion, files, records, or preliminary hearing that a substantial issue is presented requiring a full hearing.' [Citation omitted.]" *Sola-Morales v. State*, 300 Kan. 875, 881, 335 P.3d 1162 (2014).

When the trial court holds a full evidentiary hearing on the motion, the court must issue findings of fact and conclusions of law for all issues presented. Supreme Court Rule 183(j) (2017 Kan. S. Ct. R. 222). This court reviews the trial court's findings of fact using a substantial competent evidence standard and determines whether they are sufficient to support the trial court's conclusions of law. This court reviews the trial court's conclusions of law de novo. *State v. Adams*, 297 Kan. 665, 669, 304 P.3d 311 (2013).

To show that he or she is entitled to relief, a K.S.A. 60-1507 movant must establish by a preponderance of the evidence that: (1) "the judgment was rendered without jurisdiction"; or (2) "the sentence imposed was not authorized by law or is otherwise open to collateral attack"; or (3) "there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." K.S.A. 60-1507(b); Supreme Court Rule 183(g).

Supreme Court Rule 183(c)(3) (2017 Kan. S. Ct. R. 223) provides:

"A proceeding under K.S.A. 60-1507 ordinarily may not be used as a substitute for direct appeal involving mere trial errors or as a substitute for a second appeal. Mere trial errors must be corrected by direct appeal, but trial errors affecting constitutional rights may be raised even though the error could have been raised on appeal, provided exceptional circumstances excuse the failure to appeal."

4

Our Supreme Court has defined "exceptional circumstances" to include """unusual events or intervening changes in the law which prevent a movant from reasonably being able to raise all of the trial errors in the first post-conviction proceeding.""" *State v. Mitchell*, 297 Kan. 118, 123, 298 P.3d 349 (2013). Ineffective assistance of counsel can amount to exceptional circumstances. *Rowland v. State*, 289 Kan. 1076, 1087, 219 P.3d 1212 (2009).

*Are Some Issues Raised in Marks' K.S.A. 60-1507 Motion Not Properly Before This Court?*

We must determine which issues from Marks' K.S.A. 60-1507 motion are properly before this court. Marks identified nine issues in his K.S.A. 60-1507 motion. At the evidentiary hearing, Marks' counsel argued only two of those issues. Nevertheless, Marks requested that all nine issues be preserved for appeal. As a result, the trial court's order addresses each issue raised in Marks' motion. The trial court did so because the record and the testimony from the evidentiary hearing provided a sufficient basis to decide the issues that were not argued.

The trial court's order identified the following nine issues: (1) ineffective assistance of trial counsel relating to pretrial investigation methods; lack of presentation of a voluntary intoxication defense; failure to adequately argue at closing; lack of adequate voir dire and failure to make a *Batson* challenge; and lack of communication with Marks which should have resulted in the trial court appointing new counsel; (2) ineffective assistance of counsel relating to a question the jury asked the trial judge; (3) ineffective assistance of counsel relating to the failure to hire an expert to testify on Marks' state of mind—an argument previously advanced under Issue 1; (4) ineffective assistance of appellate counsel for failing to raise certain arguments on appeal; (5) prosecutorial misconduct; (6) trial court error based on failing to appoint new counsel— an argument previously advanced under Issue 1; (7) ineffective assistance of counsel for

5

failing to hire an expert to testify on Marks' state of mind—an argument previously advanced under Issue 1; (8) argument concerning trial court errors and ineffective assistance of counsel which have been previously advanced in the motion; and (9) cumulative error which deprived Marks of his right to a fair trial. It is readily apparent from the trial court's order that each and every one of Marks' arguments was considered by the trial court.

But when we compare the trial court's order with Marks' and his appellate counsel's briefs on appeal, we learn that some new arguments that were not addressed in the trial court's order are now being presented. In fact, very little of Marks' brief addresses the same factual assertions supporting the arguments found in his actual K.S.A. 60-1507 motion or in his memorandum in support of his motion, nor were these factual assertions argued at the evidentiary hearing. Instead, Marks focuses the bulk of his brief arguing facts relating to evidence that he contends was obtained illegally during his initial criminal trial.

Highly summarized, the new arguments are based on the following factual assertions. Marks stabbed his wife in Kansas City, Kansas. After the murder, Marks went to a restaurant in Kansas City, Missouri. An employee of the restaurant called the Kansas City, Missouri Police Department (KCMOPD) because Marks was extremely intoxicated. When the police arrived, they saw that Marks had injuries from falling in the parking lot of the restaurant. The KCMOPD took Marks into custody and had him transported to North Kansas City Hospital, in Missouri, for treatment. While at the hospital, a detective from the Kansas City, Kansas Police Department (KCKPD) retrieved Marks' clothing and cell phone without a warrant. The KCKPD detective did not view the contents of the cell phone until a warrant for the phone's contents was issued.

When the cell phone was introduced at the jury trial, Marks' trial counsel, Charles Lamb, acknowledged that maybe he should have filed a suppression motion on the phone. At this point, we note that Lamb was Marks' third attorney, meaning he had not

been Marks' attorney from the start of the case. In fact, when the cell phone was introduced at trial, it was the first time Lamb had heard about how the phone was obtained. Lamb did not take issue with the clothing, because it was in plain view of the KCKPD at the hospital. When Lamb voiced his concern over the origins of the cell phone as evidence, the trial judge excused the jury so that a discussion could be had. After hearing brief arguments, the trial judge and Lamb had the following exchange:

> "THE COURT: But Mr. Marks was under arrest, he was under arrest for a homicide, [KCMOPD] knew what the homicide was, they knew that there had been a stabbing. It was apparent that there was bloody clothing, that he had bloody clothing or at least a bloody shirt on at that point in time. He was under arrest. When somebody's under arrest, they're searched, all their property's taken into custody and that's essentially how [KCKPD] came into possession.
> "MR LAMB: It's just an interesting issue, it's a unique situation. I just want to preserve the record on that
> "THE COURT: Mr. Lamb, if you're objecting that there was an illegal search and seizure, the court's going to rule against you.
> "MR. LAMB: Thank you, Judge.
> "THE COURT: And the court's going to rule that it came into [KCKPD] possession as a result of a lawful arrest."

Marks now asserts that the cell phone and clothing were unlawfully obtained by the KCKPD. As a result, he argues that his trial counsel was ineffective for failing to move to suppress the evidence and that the prosecutor engaged in prosecutorial misconduct because she knowingly used the unlawfully obtained evidence. Similarly, Marks' appellate counsel bases the bulk of his arguments on this new set of factual circumstances. Marks' appellate counsel argues that trial counsel was ineffective for three reasons: (1) he failed to properly investigate how the police obtained Marks' cell phone and clothes; (2) he failed to file a motion to suppress the illegal search and seizure of the cell phone and clothes; and (3) he failed to object to the illegally obtained cell phone and clothes being admitted into evidence. These are not the only arguments advanced by

Marks and his appellate counsel, but these are the arguments raised that are related to the newly asserted facts.

It is well-accepted that issues not raised before the trial court cannot generally be raised for the first time on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). Additionally, we know that absent "exceptional circumstances," mere trial errors must be corrected by direct appeal. See Supreme Court Rule 183(c)(3) (2017 Kan. S. Ct. R. 223).

Here, we can say with confidence that the arguments based on the new set of factual assertions, while cloaked in the same framework as Marks' K.S.A. 60-1507 motion, are being raised for the first time on appeal. Also, we can say with confidence that neither Marks nor his appellate counsel acknowledge this fact or attempt to argue exceptional circumstances. The State, on the other hand, points out that the "issue is not preserved for appeal as it was not raised in the Defendant's written K.S.A. 60-1507 Motion, nor at the evidentiary hearing."

Based on those well-accepted rules, we determine that many of the arguments raised in Marks' and his appellate counsel's briefs are not properly before this court as they were not raised in Marks' K.S.A. 60-1507 motion nor were they raised at the trial court's evidentiary hearing on the same. Additionally, Marks has done nothing to show exceptional circumstances excusing his failure to bring the claims in his direct appeal. Accordingly, we are precluded from hearing the arguments pertaining to the contested evidence—the cell phone and clothing.

Moreover, the trial court clearly ruled that the evidence was obtained as the result of a search incident to a lawful arrest—a well-recognized exception to the warrant requirement. See *State v. Carlton*, 297 Kan. 642, 645, 304 P.3d 323 (2013) (recognizing a search incident to a lawful arrest as an exception to the warrant requirement).

Furthermore, the State would have had a strong argument under the doctrine of inevitable discovery. "'The test under the inevitable discovery rule is that, if the prosecution establishes by a preponderance of the evidence that the unlawfully obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible.' [Citation omitted.]" *State v. Stowell*, 286 Kan. 163, 166, 182 P.3d 1214 (2008). Here, in all likelihood, the cell phone and clothing would have been discovered by the KCKPD, as they would have been kept by the KCMOPD because they were in Marks' possession when he was arrested.

Assuming arguendo that we were not precluded from considering these arguments, Marks was not prejudiced by the contested evidence: the cell phone and clothes. On direct appeal, our Supreme Court rejected Marks' argument that cumulative error had robbed him of his right to a fair trial, acknowledging that "[t]he test for cumulative error is 'whether the totality of the circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against defendant.' [Citation omitted.]' [Citations omitted.]" *Marks*, 297 Kan. at 150-51. The court concluded that "[t]he identified errors do not overtake the strength of evidence against Marks. The evidence of guilt was *overwhelming* based in significant part on his own statements to [his wife], friends, and family." (Emphasis added.) 297 Kan. at 151.

As a result, only the arguments that have been properly preserved for appeal—those that were both presented to the trial court in Marks' written motion or at the evidentiary hearing and argued in the appellate briefs—will be addressed. They are the following: whether the trial court should have granted (1) Marks' motion to substitute counsel; (2) whether trial counsel's performance amounted to ineffective assistance of counsel in failing to investigate the victim's past; and (3) whether trial counsel's performance amounted to ineffective assistance of counsel in failing to present the defense of voluntary intoxication.

9

*Issues Relating to Marks' Motion to Substitute Counsel*

Marks originally filed his K.S.A. 60-1507 motion pro se. Then, Marks' appointed counsel argued the motion at the evidentiary hearing. On appeal, Marks filed a pro se brief. Additionally, Marks' appointed appellate counsel filed a brief to supplement Marks' pro se brief. Consequently, we are faced with a scenario where it becomes difficult to organize arguments in a way that makes sense across all briefs and the motion. Nonetheless, two properly preserved issues can be discussed together under the umbrella of Marks' motion to substitute counsel. These two issues are (1) whether the trial court abused its discretion in denying Marks' motion to substitute counsel and (2) whether trial counsel's performance amounted to ineffective assistance where Marks asserts that the level of communication was not commensurate with the seriousness of the charge. These issues both center on the amount of time that Marks' trial counsel spent with him in preparation for trial. Accordingly, the issues can be discussed together.

On appeal, Marks argues that the trial court abused its discretion in denying his request to substitute counsel. Additionally, Marks argues that his trial counsel, Lamb, failed to adequately communicate with him, which resulted in ineffective assistance of counsel. Specifically, Marks asserts that Lamb only visited him for a total of 4 hours and 35 minutes at the jail before trial. This assertion is also the basis for Marks' argument that that the trial court abused its discretion in denying his motion to substitute counsel.

On July 1, 2009, Marks moved to substitute counsel alleging a complete breakdown in communication between himself and Lamb. On July 8, 2009, the trial court held a hearing on Marks' motion to substitute counsel. At the hearing, the State pointed out that Lamb was Marks' third appointed attorney and that three trial dates had already come and gone as a result of Marks obtaining new counsel. After the arguments, the trial court determined that Marks' asserted conflict did not rise to the level of justifying

substitute counsel. The trial judge told Marks that he had appointed Lamb to represent Marks specifically because he believed Lamb would do a satisfactory job.

At the evidentiary hearing, Marks again raised the issue of whether he had adequate communication with Lamb before trial. Lamb acknowledged that "communication in the first 30 days [of his appointment] was not as much as Mr. Marks would have liked." In fact, Marks had filed a complaint with the disciplinary administrator regarding Lamb's level of communication during the early part of his representation. Lamb explained that he was busy with two trials in the first 30 days that he represented Marks, but after the first 30 days he spent a "great deal of time with Mr. Marks." The trial court's order indicated that it agreed with and was adopting the State's arguments from the hearing on Marks' motion to substitute counsel held July 8, 2009. Thus, the trial court rejected Marks' arguments that the trial court abused its discretion in denying his request to substitute counsel and that trial counsel's performance amounted to ineffective assistance of counsel.

With that background information in mind, we turn to whether the trial court abused its discretion in denying Marks' request to substitute counsel and whether Lamb provided Marks with effective assistance of counsel.

*Did the Trial Court Abuse Its Discretion in Denying Marks' Request to Substitute Counsel?*

Marks argues that the trial court erred in denying his motion to withdraw and substitute counsel. We note that Marks did not raise this issue in his direct appeal after his conviction. As was previously mentioned, absent exceptional circumstances, a K.S.A. 60-1507 motion cannot be used to correct mere trial errors not raised on direct appeal. Supreme Court Rule 183(c)(3). As a threshold matter, we point out that Marks does not

11

argue any exceptional circumstances excusing his failure to raise this issue on direct appeal.

In his pro se brief, Marks presents the same argument from his K.S.A. 60-1507 motion—that "[t]he trial court abused [its] discretion by not granting Defendant a new attorney when it became apparent that counsel was not taking a real interest in the Defendant's case." Marks goes on to support his argument by referring to the newly asserted factual situation previously discussed. Thus, as it pertains to his original argument presented in the written motion—that the trial court abused its discretion in denying his request to substitute counsel because there was a complete breakdown in communication—there is little support in his brief. Marks' appellate counsel does not advance any argument asserting that the trial court abused its discretion. Marks concludes his argument on this issue by asserting that "[t]he Court violated the Petitioner's rights to a fair trial by allowing Mr. Lamb to stay on the Petitioner's case!"

Marks' failure to argue exceptional circumstances notwithstanding, this court reviews a trial court's refusal to appoint new counsel for an abuse of discretion. *State v. McGee*, 280 Kan. 890, 894, 126 P.3d 1110 (2006). A trial judge abuses his or her discretion (1) when no reasonable person would take the view adopted by the trial court; (2) when the judicial action is based on an error of law; or (3) when the judicial action is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

In determining whether the trial court abused its discretion, it is important to understand what Marks was required to show to obtain new counsel. "To warrant the appointment of new counsel, a defendant must show 'justifiable dissatisfaction' with his or her appointed counsel. 'Justifiable dissatisfaction' may be demonstrated by showing a conflict of interest, an irreconcilable conflict, or a complete breakdown in communications between the defendant and his or her appointed attorney. [Citation omitted.]" *McGee*, 280 Kan. at 894.

12

The trial court relied on *McGee* and *State v. Bryant*, 285 Kan. 970, 179 P.3d 1122 (2008), in finding that "the dispute between Lamb and Marks did not rise to the level of a conflict of interest or a breakdown in communication. [Marks] has not established an abuse of discretion on the part of the trial court in denying the removal of Lamb after a full and complete hearing."

In *McGee*, the defendant also moved for appointment of new counsel based on a lack of communication. The trial court held a hearing on the defendant's motion. At the hearing, trial counsel rebutted the defendant's claims. On appeal, our Supreme Court noted that the defendant's arguments seemed to assume that trial counsel was not working on the case unless he was with the defendant—an assumption not supported by the facts of the case. Thus, the court found that the defendant had failed to meet his burden of showing that the trial court abused its discretion. *McGee*, 280 Kan. at 894-96.

In *Bryant*, the defendant also moved pro se for change of counsel based primarily on a lack of communication. The motion was heard at the preliminary hearing in the defendant's case. At the preliminary hearing, trial counsel denied the allegations made in the motion, and the trial court denied the motion. 285 Kan. at 987. The trial court reheard the defendant's motion nearly 2 months later. The trial court once again denied the motion because trial counsel had indicated to the court that she was willing to do her best despite the defendant's complaints. 285 Kan. at 988-990. At sentencing, the defendant once again asked for new counsel. The trial court denied the request, noting that the defendant had failed to give any specific reason as to why trial counsel was not qualified to continue her representation. 285 Kan. at 991. On appeal, our Supreme Court affirmed the trial court's denial of the defendant's many requests to substitute counsel, holding that it was untrue that no reasonable person would have agreed with the trial court. 285 Kan. at 993.

13

Here, we agree with the trial court's conclusion that Marks failed to show dissatisfaction justifying new counsel. Like the defendant's claims in *McGee*, Marks seems to assume that the only time Lamb was working on his case was when he was visiting Marks. This is directly refuted by Lamb's testimony that he worked on the case at his office and even in his home. Additionally, and similar to *Bryant*, aside from the basic assertion that Lamb failed to adequately communicate, Marks failed to provide the court with any specific reasons justifying substitution.

Moreover, Lamb's testimony at the original hearing on Marks' motion to substitute counsel and his testimony at the evidentiary hearing on Marks' K.S.A. 60-1507 motion both indicate that he was prepared for trial and willing to represent Marks despite Marks' complaints. Furthermore, Lamb presented correspondence in the form of letters that show that he and Marks were having meaningful communication leading up to the trial. The letters reference specific pieces of evidence and discuss possible trial strategy. Thus, the letters support the trial court's conclusion that the original trial court did not abuse its discretion in denying Marks' request to substitute counsel.

In conclusion, and notwithstanding Marks' failure to argue exceptional circumstances excusing his failure to directly appeal the issue, we hold that a reasonable person would have taken the view of the trial court in denying Marks' motion to substitute counsel. Thus, we hold that the trial court in Marks' criminal trial did not abuse its discretion in denying Marks' motion to substitute counsel.

*Did Trial Counsel's Performance Amount to Ineffective Assistance of Counsel Based on the Alleged Lack of Communication?*

This issue is inextricably tied to the previous issue as Marks asserts the same facts in support his claim of ineffective assistance of counsel that were asserted previously. Accordingly, the general facts previously discussed will not be presented again.

14

When a defendant alleges a claim of ineffective assistance of counsel, the court is faced with mixed questions of fact and law. When a trial court holds a full evidentiary hearing on the claim, an appellate court must determine whether the trial court's findings are supported by substantial competent evidence and whether the factual findings support the court's legal conclusions; an appellate court then reviews the trial court's conclusions of law de novo. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015).

To be successful on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that counsel's performance was deficient, and (2) that the performance prejudiced the defendant, *i.e.*, that there is a reasonable probability that but for the deficient performance, the jury would have reached a different result. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014) (relying on *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674, *reh. denied* 467 U.S. 1267 [1984]).

On appeal, Marks relies on *Aldrich v. State*, No. 109,326, 2014 WL 1707579 (Kan. App. 2014) (unpublished opinion), (*rev. denied* 300 Kan. 1103) (2014), to show that Lamb's lack of communication amounted to ineffective assistance of counsel. In *Aldrich*, after much procedural struggle, the defendant was granted an evidentiary hearing on his K.S.A. 60-1507 motion. After the hearing, the trial court held that the defendant's trial counsel had not provided adequate representation, which affected the trial's outcome. 2014 WL 1707579, at *1. In making its finding, the trial court focused on the advice that trial counsel had given the defendant and the lack of time trial counsel had spent investigating the case before trial, which led to multiple trial errors. 2014 WL 1707579, at *3. The State appealed the trial court's finding. On appeal, this court noted that the record supported the trial court's finding that trial counsel had visited the defendant in jail eight times for a total of 2.76 hours before trial. 2014 WL 1707579, at *7. But this court also noted that "inadequate time spent preparing for trial must be combined with actual errors that prejudiced the defense to constitute ineffective assistance of counsel." 2014

WL 1707579, at *7 (citing *State v. Cheatham*, 296 Kan. 417, 433-34, 292 P.3d 318 [2013]). The court then recognized that the trial court had "attributed the trial errors that occurred to the lack of time that [trial counsel] spent investigating the case." 2014 WL 1707579, at *7. Thus, the trial court's decision was affirmed on appeal. 2014 WL 1707579, at *16.

Here, the State argues that *Aldrich* is not persuasive because Marks has failed to show actual trial errors that prejudiced his defense. We agree. Marks' arguments tend to rely on the assertion that the 4.35 hours that Lamb spent visiting with Marks in the jail is per se ineffective assistance of counsel as it is not commensurate with the seriousness of the charge he was facing. But the record on appeal does not support the argument that Lamb was ineffective. Instead, the testimony from the hearing on Marks' motion to substitute counsel and the evidentiary hearing on Marks' K.S.A. 60-1507 motion shows that Lamb put real thought and attention into presenting a defense on Marks' behalf, despite any claim that he did not meet with Marks for an adequate period of time. Furthermore, the 4.35 hours asserted as the time Lamb spent meeting with Marks in no way indicates the true amount of preparation that Lamb put into representing Marks.

Additionally, the letters that were discussed in the previous section show that Lamb was prepared to provide Marks with competent counsel. In fact, at the evidentiary hearing on Marks' motion, Marks' counsel made the following remarks regarding Lamb's performance:

> "I don't see where—it did not appear to this counsel anyway that Mr. Lamb's
> performance was in any way hindered or affected. It looked like he was very diligent,
> made many, many, many objections on the record about the case and seemed to be very
> on top of the issues that he addressed."

16

The preceding facts, paired with Marks' failure to point to real trial errors tied to the alleged lack of time Lamb spent preparing, lead us to conclude that Lamb's assistance was not ineffective. Marks' failure also shows that he did not meet his burden of proving that Lamb's performance was deficient and that he was prejudiced by any such deficiency.

Thus, the trial court's findings were supported by substantial competent evidence and were sufficient to support its conclusion that Marks' ineffective assistance of counsel claim based on the lack of time Lamb spent meeting with him or a breakdown in communication was fatally flawed. Accordingly, Marks' argument fails.

*Did Trial Counsel's Performance Amount to Ineffective Assistance of Counsel in Failing to Investigate the Victim's Past?*

Marks also claims ineffective assistance of counsel based on Lamb's failure to investigate the victim's alleged violent history that would have supported a claim of self-defense. Marks argues that Lamb had "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." In his K.S.A. 60-1507 motion, Marks alleged that "[i]n the very first meeting with the court appointed counsel . . . he was adamant in letting counsel know that he wanted an investigator to do a background check on [the] victim that would have shown that she had in [the] past used a knife in [an] act of violence."

The State argues that Marks' claim should be dismissed as a threshold matter because he has failed to make more than conclusory contentions and the claim has no evidentiary basis. The State also argues that even if we were to address the argument, Marks cannot establish prejudice because he cannot show that the evidence of the victim's past would have been admissible at trial.

17

Our Supreme Court has recognized that "'[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *State v. Orr*, 262 Kan. 312, 327, 940 P.2d 42 (1997) (quoting *Strickland*, 466 U.S. at 691.

Despite Marks' assertion that he told Lamb that he needed to investigate the victim's past, Lamb's testimony at the evidentiary hearing on Marks' K.S.A. 60-1507 motion indicates that he was not aware of any such issues. Lamb testified: "I don't recall that conversation. And I've looked in my notes and records and I have no indication in my notes and records of that." Then, the following exchange occurred, with the State asking questions and Lamb providing answers:

"Q.     Had you known that, let's say Mr. Marks did tell you that, what do you think the likelihood of having something like that admitted from the 1990's [*sic*] in a 2008 murder trial would be?

"A.     Well, I think it's not likely, but it depends on the facts and circumstances. But had we known that that existed, I would have obtained the evidence and pursued it. But since I didn't, I have to conclude that I had no idea about that.

"Q.     And as you sit here today, you don't know if there is such evidence that exists?

"A.     I do not."

First and foremost, based on the record on appeal we cannot say for sure whether Lamb had knowledge of the victim's alleged history of violence. Furthermore, we cannot say for sure whether such history of violence actually exists. Thus, if Marks has not shown that Lamb had knowledge of the victim's past, we cannot say that Lamb betrayed his duty to make a *reasonable* investigation into the victim's past. Put another way, Lamb

18

cannot be said to have failed to *reasonably* investigate something that he had no knowledge of to begin with. Moreover, we certainly cannot say that Lamb failed to reasonably investigate something that we cannot reasonably say exists. As a threshold matter, then, we cannot say that Lamb's performance was deficient.

But even if we assume that the evidence exists and that Lamb was deficient, the State argues that "[i]t is pure speculation whether or not such a prior occurrence would have even been relevant pursuant to case law that tends to limit the admissibility of violent acts remote in time." ""Determining whether evidence is too remote to be admissible rests within the sound discretion of the trial court. Mere lapse of time alone is not sufficient to deprive evidence of its probative value, but goes to the weight of the evidence to be considered by the jury.' [Citations omitted.]'" *State v. Walters*, 284 Kan. 1, 14, 159 P.3d 174 (2007).

The State specifically points to *State v. Houston*, 289 Kan. 252, 262, 213 P.3d 728 (2009), to show that even if the victim had committed some violent acts in the past, those acts would most likely not be admissible. In *Houston*, the defendant was charged with murder and asserted that the killing had been done in self-defense. To support his claim, the defendant sought to have evidence admitted that would show that the victim had hit his son with a rock prior to the killing. On appeal our Supreme Court found that the trial court was well within its discretion to exclude such evidence because the incident from the proposed evidence had occurred 2 years before the killing. *Houston*, 289 Kan. at 262.

Here, we are not dealing with evidence that is 1 year old, or even 2 years old. Instead, we are dealing with alleged evidence from the 1990s, which means it would have been at least 9 and as many as 18 years old at the time of trial. It is also worth mentioning that when Marks was questioned about the victim's history at the evidentiary hearing on his K.S.A. 60-1507 motion, he acknowledged that she had never been violent with him before. The remoteness in time of the evidence together with the fact that the victim had

19

not been violent with Marks during their relationship tends to show that the evidence would not have been found relevant.

We point out that we do not even know whether such evidence exists. Marks has done little more than make conclusory statements in referencing police and hospital reports from the 1990s. Thus, even if Lamb's performance was deficient in failing to investigate the victim's past, Marks has not shown prejudice because he has not established that such evidence would have been admissible.

Finally, we acknowledge that Lamb did procure a self-defense instruction at Marks' trial. Additionally, Marks took the stand at trial and was able to lay out his claim of self-defense by telling his version of events to the jury. The jury rejected Marks' claim of self-defense. At this point, we note that Marks was facing what our Supreme Court described as overwhelming evidence of guilt at trial. This means that even with some evidence of the victim's alleged violent past, he was facing an uphill battle. Thus, it is clear that Marks has failed to show that he was prejudiced by Lamb's failure to investigate the victim's past.

The trial court was guided on the rule from *Holt v. State*, 290 Kan. 491, 496, 232 P.3d 848 (2010): "that mere conclusory allegations without an evidentiary basis will not support an ineffective assistance of counsel claim." This proves a particularly relevant rule here where Marks does little more than claim that some acts in the victim's past from the 1990s should have been investigated by Lamb. Marks has failed to show that Lamb's performance was deficient. Moreover, even if Lamb's performance was deficient, Marks has failed to show that he was prejudiced by it. Consequently, the trial court's findings were supported by substantial competent evidence and were sufficient to support its conclusion that Lamb was not ineffective based on the failure to perform an adequate pretrial investigation of the victim's past.

20

*Did Trial Counsel's Performance Amount to Ineffective Assistance of Counsel in Failing to Present the Defense of Voluntary Intoxication?*

Finally, Marks argues another claim of ineffective assistance of counsel asserting that Lamb was ineffective in failing to adequately present the defense of voluntary intoxication.

At the evidentiary hearing, Marks' counsel acknowledged that Lamb was able to procure a voluntary intoxication jury instruction. Marks' counsel also acknowledged that one of the previously discussed correspondence letters that Lamb wrote to Marks indicates that Lamb was contemplating the voluntary intoxication defense before trial. Additionally, the following exchange occurred at the evidentiary hearing with Marks' 1507 counsel asking questions and Lamb answering:

> "A.   We had witnesses who were going to testify, especially from the sandwich shop . . . that [Marks] was very intoxicated. We had other witnesses talking about the intoxication after the event. My concern was trying to get evidence in of intoxication prior to the stabbing itself. I don't think there was any dispute that he was very intoxicated afterwards . . . I mean the jury understood he was very intoxicated at that point.

> "Q.   Let me rephrase the question this way. If, based on your knowledge and experience as a criminal defense attorney, if you had felt that there was evidence to be presented about intoxication prior to the stabbing, would you have brought that evidence out to the court?

> "A.   If we had any viable evidence of that prior to the stabbing, we would have brought that evidence in."

After the evidentiary hearing, the trial court rejected Marks' argument that Lamb was ineffective relating to the voluntary intoxication defense. The trial court's order,

21

though lengthy, provides us with a thorough summary of the facts surrounding the defense and why Lamb was not able to fully pursue it. For example, the trial court's order stated:

"Counsel . . . indicated that he was aware of Marks' intoxication at the time of his subsequent arrest and had discussed this issue of intoxication at the time of the crime with potential witnesses. When he did not receive a response favorable to his client, counsel did not proceed with extensive questioning at trial. He did provide sufficient evidence on that point that the court granted his request for voluntary intoxication instruction. . . .

"The second prong of the pro se memorandum is that counsel did not adequately present the voluntary intoxication defense. Again, this argument is not borne out by the testimony of trial counsel and the instruction that was given to the jury. Counsel was aware of the toxicology report made when the Plaintiff was arrested after the crime and asked sufficient questions to secure the intoxication instruction. *This defense was presented by counsel but was not believed by the jury*. (Emphasis added.)

. . . .

"Issue No. 3 alleges that trial counsel was ineffective for failing to hire an expert to testify as to his frame of mind. It appears that this issue is merely a repeat of earlier arguments regarding counsel's efforts. Marks desired to have the jury consider the effect that alcohol and/or drugs had on his actions at the time of the stabbing. He now claims that counsel should have secured an expert to assist in this contention.

"As trial counsel explained at the habeas corpus hearing, he was aware of the reports that Marks was very intoxicated **at the time of his arrest**. That time frame was clearly after the stabbing. Counsel also advised that during his investigation in this case he asked witnesses about the condition of [Marks] at the time of the crime. Based on the answers he received from these witnesses he felt that he could not fully proceed with that defense. Counsel was eventually able to secure enough testimony to request and receive an instruction on voluntary intoxication. Trial counsel was able to present the type of evidence that Marks is requesting."

"Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the

22

distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Bledsoe v. State*, 283 Kan. 81, 90, 150 P.3d 868 (2007). Furthermore, the reviewing court must operate under the strong presumption that counsel's conduct fell within the broad range that is reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014).

After reading the trial court's order and reviewing the record, it becomes clear that Lamb did not fully pursue the voluntary intoxication defense because the evidence did not take him in that direction. Putting ourselves in his position and recognizing the circumstances he was facing, we determine that Lamb did well to develop sufficient testimony to obtain the giving of the voluntary intoxication instruction.

Thus, the trial court's findings were supported by substantial competent evidence and were sufficient to support its conclusion that Lamb was not ineffective in failing to adequately argue the voluntary intoxication defense. To the contrary, Lamb did adequately argue the defense. Accordingly, Marks' argument that Lamb provided ineffective assistance of counsel in failing to adequately argue the voluntary intoxication defense is unpersuasive.

Affirmed.